# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| ERIC SABATINI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| RIBBON COMMUNICATIONS INC., KIM S. FENNEBRESQUE, BRUNS H. GRAYSON, BEATRIZ V. INFANTE, RICHARD J. LYNCH, KENT J. MATHY, SCOTT E. SCHUBERT, and RICK W. SMITH, | ) CLASS ACTION ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. On November 14, 2019, Ribbon Communications Inc.'s ("Ribbon" or the "Parent") Board of Directors (the "Board" or "Individual Defendants") caused Ribbon to enter into an agreement and plan of merger (the "Merger Agreement") with Eclipse Communications Ltd., Ribbon Communications Israel Ltd., ECI Telecom Group Ltd. ("ECI"), and ECI Holding (Hungary) Korlátolt Felelősségű Társaság.

2. Pursuant to the terms of the Merger Agreement, all ECI equity securities will be converted into the right to receive $324 million in cash and 32.5 million shares of Ribbon common stock, and Merger Sub will be merged with and into ECI, with ECI continuing as a wholly-owned subsidiary of Ribbon (the "Proposed Transaction").

3. On January 10, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC"), which recommends that Ribbon's stockholders vote to approve the Proposed Transaction at a special meeting scheduled for January 27, 2020.

4. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Ribbon common stock.

9. Defendant Ribbon is a Delaware corporation and maintains its principal executive offices at 4 Technology Park Drive, Westford, Massachusetts 01886. Ribbon's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "RBBN."

10. Defendant Kim S. Fennebresque is a director of Ribbon.

11. Defendant Bruns H. Grayon is a director of Ribbon.

12. Defendant Beatriz V. Infante is a director of Ribbon.

13. Defendant Richard J. Lynch is Chairman of the Board of Ribbon.

14. Defendant Kent J. Mathy is a director of Ribbon.

15. Defendant Scott E. Schubert is a director of Ribbon.

16. Defendant Rick W. Smith is director of Ribbon.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Ribbon (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

19. This action is properly maintainable as a class action.

20. The Class is so numerous that joinder of all members is impracticable. As of January 8, 2020, there were approximately 110,959,971 shares of Ribbon common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

21. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff

and the other members of the Class if defendants' conduct complained of herein continues.

22. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

23. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

24. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of Ribbon and the Proposed Transaction*

25. Ribbon delivers market-leading software solutions that secure and power many of the world's leading service provider and enterprise communications environments.

26. Ribbon's cloud-native solutions deliver intelligent and secure real-time communications solutions for the cloud, network, and enterprise edge.

27. Ribbon's Kandy Cloud real-time communications software platform delivers advanced and embedded CPaaS and UCaaS capabilities enabling service providers to rapidly create and deploy high-value communications services.

28. On November 14, 2019, the Individual Defendants caused Ribbon to enter into the Merger Agreement.

29. Pursuant to the terms of the Merger Agreement, all ECI equity securities will be converted into the right to receive $324 million in cash and 32.5 million shares of Ribbon common stock, and Merger Sub will be merged with and into ECI, with ECI continuing as a wholly-owned subsidiary of Ribbon.

30. According to the press release announcing the Proposed Transaction:

> Ribbon Communications Inc. (Nasdaq: RBBN), a global software leader in secure and intelligent cloud communications, today announced that it has entered into an agreement to acquire, through a merger, ECI Telecom Group Ltd ("ECI"), a global provider of end-to-end packet-optical transport and SDN/NFV solutions for service providers, enterprises, and data center operators, for 32.5 million shares of Ribbon common stock and $324 million of cash. ECI stockholders will also receive approximately $31 million from ECI's sale of real estate assets. . . .
>
> Transaction Details
>
> Under the terms of the merger agreement, Ribbon will acquire all outstanding equity of ECI. Ribbon will issue 32.5 million shares of its common stock to ECI stockholders and provide $324 million of net cash consideration. ECI stockholders are expected to own approximately 23 percent of the combined company on a fully diluted basis. Cash consideration is expected to be financed through cash on hand and committed debt financing consisting of a new $400 million term loan facility and new $100 million revolving credit facility, which is projected to be undrawn at close. The new facilities will retire Ribbon's existing credit facility. In addition, ECI stockholders will also receive approximately $31 million from ECI's sale of real estate assets. The proposed transaction has been unanimously approved by Ribbon's board of directors and is subject to the approval of Ribbon's stockholders, regulatory approvals and customary closing conditions. Ribbon anticipates the acquisition will close in the first quarter of 2020. Ribbon's corporate headquarters is expected to remain in Westford, Massachusetts. . . .
>
> TAP Advisors and Citizens Capital Markets acted as financial advisors to Ribbon and Latham & Watkins LLP and GKH Law Offices served as Ribbon's legal advisors. Barclays acted as a financial advisor to ECI and Davis Polk & Wardwell LLP and FBC & Co served as ECI's legal advisors. Citizens Bank, N.A. has provided fully committed debt financing for the transaction.

*The Proxy Statement Omits Material Information*

31. Defendants filed the Proxy Statement with the SEC, which recommends that Ribbon's stockholders vote to approve the Proposed Transaction at a special meeting scheduled for January 27, 2020.

32. As set forth below, the Proxy Statement omits material information.

33. First, the Proxy Statement omits material information regarding the Company's, ECI's, and the combined company's financial projections.

34. With respect to the "Ribbon Management Forecasts," the Proxy Statement fails to disclose: (i) all line items used to calculate (a) Adjusted EBITDA and (b) Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

35. With respect to the "Adjusted ECI Forecasts," the Proxy Statement fails to disclose: (i) all line items used to calculate (a) Adjusted EBITDA and (b) Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

36. With respect to the "Combined Projections," the Proxy Statement fails to disclose: (i) all line items used to calculate (a) Adjusted EBITDA and (b) Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

37. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

38. Second, the Solicitation Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, TAP Advisors ("TAP").

39. With respect to TAP's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the individual inputs and assumptions underlying the discount rates ranging from 12.0% to 14.0%; (iii) the terminal value of the Company; and (iv) TAP's basis for applying a perpetuity growth rate of 3.0% and a weighted average cost of capital of 13.0%.

40. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

41. Third, the Proxy Statement omits material information regarding potential conflicts of interest of TAP and the Company's additional financial advisor, Citizens Capital Markets ("CCM").

42. The Proxy Statement fails to disclose whether TAP has performed past services for Ribbon or its affiliates, as well as the timing and nature of such services and the amount of compensation received by TAP for providing such services.

43. The Proxy Statement fails to disclose the amount of compensation CCM has received or will receive in connection with its engagement, and the amount of CCM's compensation that is contingent upon the consummation of the Proposed Transaction.

44. The Proxy Statement fails to disclose whether CCM has performed past services for any parties to the Merger Agreement or their affiliates, as well as the timing and nature of such services and the amount of compensation received or to be received by CCM for providing such services.

45. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration,

selection, and implementation of strategic alternatives.

46. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

47. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Ribbon's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Ribbon

48. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Ribbon is liable as the issuer of these statements.

50. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within Ribbon, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

51. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

52. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

53. The Proxy Statement is an essential link in causing plaintiff and Ribbon's stockholders to approve the Proposed Transaction.

54. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

55. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

56. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57. The Individual Defendants acted as controlling persons of Ribbon within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Ribbon and participation in and/or awareness of Ribbon's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Ribbon, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Ribbon, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

9

herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

60. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: January 16, 2020

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com